## Chiles, et al. v. Seventh-Day Adventist Conference Association of Kentucky, et al.

(Decided October 19, 1923.)

### Appeal from Fayette Circuit Court.

1. Religious Societies—Fraud in Obtaining Deed to be Shown by Clear and Convincing Proof.—In an action by officers and members of a church to rescind a union of their church with another and to cancel a deed, the plaintiffs were obliged to prove allegations of fraud by clear and convincing proof.

2. Religious Societies—Union of Churches and Deed Not Shown Fraudulent.—In an action by officers and members of a church for rescission of a union of churches and cancellation of a deed, allegation of fraud in representing that the property would be used for church purposes held not clearly and convincingly proven.

3. Religious Societies—Not Ground for Interference by Court that Members Unwilling to Worship in House Selected.—There is no ground for interference by a court in church affairs, simply because part of the members of the society are unwilling to worship in the house selected for the purpose by the proper church authorities.

J. ALEXANDER CHILES for appellants.

J. FRANKLIN WALLACE for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

About 1893, appellant Chiles and a few others organized the "First Seventh-Day Adventist Church of Lex-

ington, Ky." In 1904, Chiles and one Tandy, together with their wives, for $450.00 paid to them, conveyed to themselves and another, as trustees of the above named church, a lot on the corner of 5th and Upper streets in Lexington, for "church purposes." A church house was erected on the lot in 1907, and the membership had increased to twenty, when in May, 1917, this church and the Memorial Seventh-Day Adventist Church of Lexington, with 32 communicants and a house and lot at 5th and Toner streets, were united.

As a basis for this union, and upon the joint recommendation of the president of the Kentucky Conference, the president of the Southern Union Conference, and the secretary of the Negro Department of North America of the Seventh-Day Adventists, the following resolutions were adopted by the two local congregations:

"In view of the great work to be done by Seventh-Day Adventists and the short time in which to do it, we recommend to the First and Memorial Seventh Day Adventist Churches of Lexington, Kentucky, as follows:

"1.   That the First Church deed its church property to the Kentucky Seventh-Day Adventist Conference Association.

"2.   That the two churches worship in their respective buildings until the first recommendation is carried out, and the deed to said property is recorded and accepted by the conference officials of the said conference association.

"3.   That the Memorial Church building be placed on sale, at the time recommendation No. 2 is carried out, and further that at this time, the Memorial Church membership be transferred to the books of the First Church.

"4.   That when the above recommendations are completed, that plans be laid to enlarge, rebuild or purchase a new site and building and farther that the narrow strip of land back of the First Church lot owned by brethern Tandy and Brice be purchased, if possible."

Complying with the first of the above provisions, the trustees of the First Church conveyed the house and lot at 5th and Upper streets to appellee Conference Association, but before the association would accept the deed, Chiles and Tandy and their wives were required to release any and all restrictions or reservations contained in their deed to the First Church, and this they did.

It is agreed that the 2nd and 3rd clauses of the above resolutions were also faithfully carried out, although the Memorial Church property, after being offered for sale, was withdrawn and devoted to school purposes.

For a time, the united church worshipped in the First Church property and used the Memorial Church building for a school, seemingly without dissatisfaction upon the part of any one.

An effort was made to purchase "the narrow strip of land back of the First Church lot from brethren Tandy and Brice," as provided in clause 4 of the above resolution, with a view of enlarging the First Church building, but they would not sell. A sale of both properties, and the purchase of a new site and the construction of a new building, were also considered, but, after much discussion, it was finally decided by a large majority of the church membership, in the latter part of 1919, that the Memorial building at 5th and Toner be used as the house of worship, and the First Church property be converted into the church school.

To this appellants, six in number, objected, and after having lost their successive appeals from the congregational action to the State, Southern, and National Conferences of Adventists, they instituted this action seeking a rescission of the agreement by which the two churches were united, a cancellation of the deed of May, 1917, from the First Church to the Conference Association of Kentucky, and that they be adjudged entitled to possession of the lot at 5th and Upper streets.

They sue as officers and members of the original First Church, and base their right to the relief they ask upon the allegation that the union of the two congregations and the deed to the Conference Association were obtained by fraud and misrepresentations by the association and the Memorial Church.

Being but a small minority of even the old First Church, their right to maintain this action upon its. behalf, and seemingly in opposition to the desires of a majority of its former members, is not clear, but, waiving that question as the defendants have done, and addressing ourselves solely to the questions of rescission and cancellation, as did the lower court, it is thoroughly established that to entitle plaintiffs to such relief, they were obliged to prove the alleged fraud by clear and convincing proof, and this they have not done.

The only fraud they allege is, that to induce plaintiffs and the First Church to agree to the union and a conveyance of the property at 5th and Upper streets to the association, it fraudulently represented that if the First Church would convey its property free of all restrictions and reservations as to its use for church purposes only, these same restrictions and reservations would nevertheless be strictly observed, and that property would be used only as a place of worship for the united church.

It obviously would take clear proof indeed to convince anyone that this Conference Association verbally agreed to observe the very restrictions it required to be eliminated before it would accept the deed, or that the First Church would have expressly waived such restrictions in its deed if the deed was made upon the faith and agreement that same were to be observed.

To sustain this anomalous proposition, we have three plaintiffs testifying to its truth, which is denied by a like number of witnesses for defendants.

Obviously in these circumstances we cannot say the alleged fraud was clearly and convincingly proven, and that the chancellor erred in deciding otherwise. Especially is this true when it is remembered that a very decided majority of the old First Church members have aligned themselves on the side of the defendants in this controversy.

Hence the charge of fraud was not sustained by the proof, as it must be to warrant a rescission or cancellation of a written contract.

Appellants also argue that they are entitled to the relief sought because of a total failure of consideration for the church union and the deed, assuming for the purposes of this argument that the sole consideration for the union and deed was that the 5th and Upper streets property always must be used for church purposes under the terms of the resolutions copied above.

But it is clearly provided therein that this property might be held and the church building thereon enlarged if certain adjoining property could be acquired, or that it might be sold and a new site acquired for a church home for the newly formed congregation. And that the provisions of these resolutions were understood by all parties as merely a basis for union, and not as binding obligations upon the new body after it was formed, is

further attested by the fact that even plaintiffs presumably agreed that instead of selling the property at 5th and Toner streets, it should be retained and devoted by the church to school purposes.

But, however that may be, we think it is patent from the very terms of the resolutions and the deed, that there was no intention by any one to restrict the new church, after the union was perfected, as to the location of its church home, to either of these properties, or to limit its use of either of them to church or school purposes. In fact, just a contrary purpose is convincingly indicated by the fact that before the deed would be accepted by the grantee in carrying out the provisions of the resolutions adopted by both congregations, all such restrictions were expressly removed, and that, too, by appellants themselves.

The fact that in deciding to use the Toner street property for church services and the Upper street property for the school conducted by the church, the congregation acted in accordance with the established rules, practices, and customs for managing and conducting its local affairs, is fully attested by the result of appellants' appeals to the higher denominational bodies.

There is no proof or complaint that appellants are being deprived of their rights as members of the congregation to use the church property in the manner decided by the majority it shall be used by all members. There is certainly no ground for interference by a court in church affairs simply because appellants are unwilling to worship in the house selected for the purpose by the proper church authorities.

Judgment affirmed.